**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ALEX SILVAGNOLI, 94-A-6046,**

        Plaintiff,      06-CV-0686A(Sr)

v.

**SISTER MARYLOU, et al.,**

        Defendants.

---

### REPORT, RECOMMENDATION AND ORDER

   This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #14.

   Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging that defendants have interfered with his practice of the Santeria religion during his incarceration at the Collins Correctional Facility ("Collins"), by denying plaintiff permission to use the kitchen area in the early morning, denying him use of proper materials for his morning rituals and otherwise interfering with his ability to perform his morning rituals. Dkt. #6-2.

   Currently before the Court is defendants' motion for summary judgment. Dkt. #40. For the following reasons, it is recommended that defendants' motion be granted.

## BACKGROUND

**Religious Permit**

By letter dated July 16, 2006, plaintiff advised defendant James Thompson, Deputy Superintendent of Programs at Collins, that he opposed Coordinating Chaplain Sister Mary Lou's inspection of his Santeria shrine and asked "to conduct any business with you" rather "than Sister Mary Lou." Dkt. #44, p.16. In a Memorandum to plaintiff dated July 19, 2006, Deputy Superintendent Thompson explained that

> Requests for permits for religious beads and shrines are directed to the Coordinating Chaplain. It is my understanding that Sr. Mary Lou indicated she will address your request this week. By directive, the shrine and beads need to be documented and supported on a theological basis for use in the practice of your documented religion. There are also requirements regarding the size of the shrine and where it can be located. To do an assessment of this, it is necessary for the Coordinating Chaplain to view the items.
>
> It is my understanding that your last disciplinary report was for having a shrine which exceeded the allowable size limits. Due to this I have instructed Sr. Mary Lou to assure that the items for which you are now requesting a permit meet the specified requirements.

Dkt. #44, p.13. On that same date, Deputy Superintendent Thompson instructed Sister Mary Lou Schnitzer, Coordinating Chaplain at Collins, to inspect plaintiff's cube and ensure that his shrine complied with DOCS Directive 4202 – Religious Programs and Practices. Dkt. #43, ¶ 4. DOCS Directive 4202 states, in relevant part, that

    (1)    An inmate may request a permit to possess a shrine which can be documented and supported on a theological basis for use in the practice of an inmate's documented religion. The shrine is to be used in his or her living quarters, and shall not exceed 1' x 1' and 1' in height. The request shall be made by writing the facility Coordinating Chaplain . . . .

> (2) The materials from which the shrine is constructed may
> consist of normally allowable items or materials, and shall
> not include any item which is contraband or which can be
> used as a weapon, used to conceal contraband or otherwise
> constitutes a threat to the safety and security of the facility,
> or any food which is subject to spoilage. The shrine may be
> openly displayed but shall not include any visible beads, and
> shall not be utilized in any manner which would constitute a
> threat to the good order, security or environmental health of
> the facility. Shrines may not be placed on top of cell
> furnishings where current local facility rules prohibit placing
> items on top of cell furnishings. The shrine shall be located
> in a non-transitory area, so that it does not interfere with
> entrance and exit to the cell or housing area.

Dkt. #43, p.17. Sister Mary Lou and Deputy Superintendent of Security Sabito Khahaifa approved the permit for the shrine on July 21, 2006. Dkt. #43, ¶ 4 & p.15.

Plaintiff filed an Inmate Grievance Complaint alleging that Sister Mary Lou violated the procedures set forth in DOCS Directive 4202 when she inspected the shrine in plaintiff's cube. Dkt. #43, p.11. The grievance was denied by Superintendent Berbary. Dkt. #43, pp.8-9. Plaintiff appealed to the Central Office Review Committee ("CORC"), stating, "this is the first time I've ever had my shrine inspected especially by a non Santeria (practitioner)." Dkt. #43, p.8. CORC denied the appeal, stating "the facility chaplain is not prohibited from inspecting a shrine to verify that it meets the requirements of Departmental policy." Dkt. #43, p.6.

**Kitchen Access**

By letter addressed to Deputy Superintendent Khahaifa dated October 2, 2006, plaintiff complained that

> I'm writing in regards of a problem I'm having in using the kitchen area in the early morning of each day. It seems that my religious practice [has] been violated. I'm a Santeria practitioner in which I do my morning rituals of prayers and offerings. I use the kitchen area for religious purpose[s] and my daily rituals.
>
> It seems that some officers are depriving me of the use of the stove in which to make my daily coffee which is my daily offering to the saints and my ancestors.

Dkt. #44, p.10. Plaintiff also filed a grievance with respect to this issue on October 2, 2006. Dkt. #44, p.12. In a Memorandum dated October 4, 2006, Chaplain Terragnoli noted no record of a need for a morning offering, let alone a need for hot coffee as a morning offering. Dkt. #44, p.9.

Sergeant Lockwood declares that he supervised plaintiff's housing unit during the overnight shift (10:00 PM to 6:30 AM), and spoke to plaintiff regarding his complaint. Dkt. #44, ¶ 4. In a memo written in response to plaintiff's complaint, Sergeant Lockwood noted that there were "no known provisions to his religion to require him to make coffee or use the kitchen before 6:00 AM." Dkt. #44, p.7. Sergeant Lockwood informed plaintiff that the kitchen did not open until 6:30 AM at which time he could obtain hot water for his coffee from the hot water urn on the kitchen counter or that he could make coffee in his cube before the kitchen opened by using a hot-pot. Dkt. #44, ¶¶ 5-6. Plaintiff acknowledged to Sergeant Lockwood that he had been borrowing his neighbor's hot-pot to make his morning coffee. Dkt. #44, ¶ 6. Following this discussion, plaintiff withdrew his grievance. Dkt. #44, ¶ 7 & p.8.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). In the instant case, despite defendants' Notice to Pro Se Litigants Opposing Summary Judgment and this Court's Order directing plaintiff to respond to the motion for summary judgment no later than June 25, 2010, plaintiff did not respond to the defendants' motion for summary judgment or request an extension of time to do so. Dkt. ##40 & 46.

**Interference with Practice of Santeria**

Defendants argue that plaintiff has failed to demonstrate that his ability to practice Santeria was compromised. Dkt. #45.

Because plaintiff is proceeding *pro se,* the Court must construe the complaint to assert those causes of action supported by the facts alleged and consider both a claim pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution and a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1. *See McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (considering RLUIPA claim even though complaint alleged only constitutional violation).

> Under RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling interest and was the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). Under the First Amendment, the law is less generous to plaintiff prisoners; a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy is "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 . . . (1987) (internal quotation omitted).

*Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010).

Plaintiff has not established that his ability to practice Santeria was impeded by DOCS Directive 4202. The record is clear that plaintiff received a permit to maintain his shrine following timely inspection of that shrine in accordance with DOCS Directive 4202 . DOCS Directive 4202 applies to all shrines and sets neutral standards regarding maximum size, permissible materials, and acceptable placement of shrines within living quarters. The inspection by Sister Mary Lou was in accordance with the directive, which places the responsibility for ensuring compliance with the Coordinating Chaplain. Plaintiff has no right to dictate who inspects his cell for compliance with DOCS policies, including DOCS Directive 4202. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (concluding that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."). Similarly, plaintiff has failed to establish that his ability to practice Santeria was impeded by lack of access to the kitchen before 6:30 a.m. The kitchen hours applied to all inmates and in lieu of access to the kitchen, plaintiff was allowed to use a hot pot in his cube to prepare coffee for his morning offering. As plaintiff failed to

demonstrate that his ability to practice Santeria was compromised, it is recommended that defendants' motion for summary judgment be granted.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that defendants' motion (Dkt. #40), be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**March 4, 2011**

          **s/ H. Kenneth Schroeder, Jr.**
          **H. KENNETH SCHROEDER, JR.**
          **United States Magistrate Judge**